The action of the plaintiff must, of course, rest upon the express promise of the defendant, made after her coverture ended, to pay the debts, or the notes which represent them. The question is whether the previous sale and delivery of the goods to the defendant during coverture was a sufficient consideration to sustain the promise. The authorities upon the subject of a promise by a married woman after coverture to pay a debt incurred or an obligation given by her during coverture are not uniform either in their reasoning or their conclusions. One of the earliest cases is Lloyd v. Lee (1 Strange, 94), where *Page 618 
a married woman gave a note as a feme sole, and after her husband's death promised to pay it. It was held that the note was void, and forbearance to sue it constituted no consideration for a promise to pay it. It will be observed that there is nothing in this case to show what was the original consideration of the note. On the other hand, in Lee v. Muggeridge (5 Taunt., 35), a married woman gave a bond, while married, to a person for money advanced by him to her son-in-law at her request. After her husband's death she promised to pay that bond, and assumpsit was sustained upon that promise. The language of Sir JAMES MANSFIELD, and of all the other judges of the Court of Common Pleas, was very strong in this case to the sufficiency of a mere moral obligation as a consideration for a subsequent promise. But this language has been questioned, and the authority of the decision weakened, by the later English authorities. Thus in Littlefield
v. Shee (2 B. A., 811), Lord TENTERDEN, delivering the judgment of the Court of King's Bench, held that a promise by a married woman to pay for goods which had been previously supplied to her during coverture was void, because the goods were in law supplied to her husband, and the price was a debt from him, not her. Lord TENTERDEN observed in his judgment that the doctrine that a moral obligation is a sufficient consideration for a subsequent promise, is one that should be taken with some limitation. Again in Meyer v. Haworth (8 A. E., 467), Lord DENMAN and all the other judges of the King's Bench adhered to this doctrine upon demurrer in a similar case. The Lord Ch. Justice said: "The record states that goods were supplied to a married woman who, after her husband's death, promised to pay. This is not sufficient. The debt was never owing from her." The cases were again adverted to, and the law upon the subject of a moral obligation as a consideration for a promise, discussed at some length by Lord DENMAN, in Eastwood v. Kenyon (11 A. 
E., 438). The action there was against the husband of a woman who had inherited lands. The plaintiff had voluntarily expended money in the improvement of the lands, while she was sole and an infant. After she came of age she assented to *Page 619 
it, and promised to pay the account, and after marriage the defendant assented to the account, and promised to repay the plaintiff, and the suit was brought on this express promise. It was held that the consideration shown was past and executed, and not at the request of the defendant or of his wife, and therefore was a mere voluntary courtesy and would not sustain the action. The case of Lee v. Muggeridge was again questioned in this judgment. In our own courts there are dicta in many cases to the effect that the moral obligation to pay a debt contracted during coverture will be a sufficient consideration for an express promise after the disability is removed. (24 Wend., 99; 25 id., 386-388.) The question, however, was never distinctly presented, as far as I am aware, until the case of Watkins v.Halstead (2 Sand. S.C., 311), where it was determined by the Superior Court of New York adversely to the doctrine advanced by the plaintiff. The decision is approved by Parsons, in his work on Contracts (vol. 1, pp. 358-361), and was followed by the court below in this case.
There is a distinction taken in some of the cases between obligations which are void, and such as are only voidable, and it is said that where the original undertaking was void, it cannot form the basis or consideration for a new promise, although it may where it is only voidable. Thus, in Meyer v. Haworth
(8 A. E., 467), PATTERSON, J., says, speaking of a supposed promise of the defendant while a married woman, upon the sale of the goods: "Such promise was not like that of an infant voidable, but was void." This distinction, however, applied to the original express contract alone, when there is one, will not explain all the cases. Thus, where money is lent upon an usurious contract which is totally void, yet, if the borrower subsequently promise to repay the money, that promise will be enforced by the courts. (2 Taunt., 182; 19 John., 147.) On the other hand, where a creditor obtained from the debtor a promissory note for the residue of his demand, as a condition of his joining with the other creditors in a composition deed acknowledging satisfaction by the receipt of a part of their debts, the note is void in law as a fraud upon the other creditors, *Page 620 
and a subsequent promise to pay it was held without consideration. (2 T.R., 763.)
Where the original contract or promise is in itself the whole consideration upon which the new promise rests, the distinction which has now been adverted to is sufficient to dispose of the case. If that contract was wholly void, it alone will not sustain a subsequent promise to fulfill it. Thus, in Lloyd v. Lee (1 Strange, 94), already quoted, the new promise of the defendant rested entirely upon her having given a note during coverture. This note was void; and as there was no proof of any other consideration, either for the note or the new promise, the action was not sustained. But where there is, beyond or before the void security or agreement, a moral obligation or duty, arising from benefit received or otherwise, which would raise an implied promise, except for a disability to make a promise, which the law imposes — a promise made after the disability is removed can rest upon this benefit and duty as a sufficient consideration. The learned note to Wennall v. Adney (3 B. P., 247-252), which has been cited and approved by the judges in subsequent cases, requires some qualification or explanation, where it states that "if a contract between two persons be void, and not merely voidable, no subsequent express promise will operate to charge the party promising, even though he has received a benefit from the contract." This remark is strictly true as to a promise founded upon the contract alone; but the case of usurious loans, which the borrower will be held to pay upon a subsequent promise, shows that when, behind the void contract, there is a sufficient consideration, it will sustain the subsequent promise. The rule stated in the residue of the note needs no qualification, and has often received express judicial approval: "An express promise can only revive a precedent good consideration which might have been enforced at law through the medium of an implied promise, had it not been suspended by some positive rule of law; but can give no original right of action, if the obligation on which it is founded could never have been enforced at law, though not barred by any legal maxim or statute provision." The receipt *Page 621 
of money, or of any benefit or advantage, from the promisee, at the request of the promisor, will sustain a promise to repay it, although the money was advanced or the benefit received under a void contract, provided that the consideration for that contract itself was not tarnished with fraud or otherwise invalid. So, when the promisor was, at the time of the receipt of the benefit, under a mere disability to contract to make it good, arising from a rule or maxim of law, and although such a contract could neither be expressed nor implied at the time, yet a subsequent promise, after the disability is removed, will rest upon the original benefit, passing over any invalid contract or promise at the time.
But this rule would not help the case of a subsequent promise to pay for goods sold or delivered to the promisor while a married woman, at common law. The difficulty in such a case was that which was seen in the two cases in the Court of King's Bench to which I have referred. (2 B. A., 811; 8 A. E., 467.) In such cases, at common law, the goods were, in law, supplied to the husband, and the price was a debt owing from him, and never from her. If, therefore, she gave a note, or other express obligation, it was not only void, but had no consideration. Even if her disability to contract were removed, or did not exist, yet, as long as the rules of the common law as to marital rights remained unchanged, there was nothing from which the law could imply a promise to pay, because the goods supplied to her became her husband's, and she acquired no beneficial interest in them. The law might imply a promise on his part to pay for them, but not on hers. For this reason, I agree that, at common law, a promise by a woman, after coverture, to pay for goods supplied to her, or, at her request, while married, could not be sustained.
But the statutes of this State, passed in 1848 and 1849, in respect to the rights of married women, give a different aspect to such a question. (Laws of 1848, p. 308; id., 1849, p. 528.) Since these statutes, any married female may take from any person, other than her husband, and convey, personal property, and it will not be subject to the disposal, or to the debts, of *Page 622 
her husband. It is true that these statutes did not remove the disability of married women to make executory contracts; so that any note or obligation, which a married woman should make upon the purchase or acquisition of property, would be void. It is true, also, that the same disability prevented the implication of any contract on her part to pay for such property. But personal property, sold or conveyed in any manner to a married woman in good faith, since the statute, by any person other than her husband, is hers, and not his. It becomes her sole and separate property, and he is neither entitled to it nor bound to pay for it. For this reason, no debt or engagement is implied on his part in consequence of its acquisition. On the other hand, such acquisition is directly beneficial to the married woman: it becomes hers, and not her husband's: and if it were not that the law disabled her, a promise to pay for it would at once be implied by the law from the fact of its acquisition.
The transactions stated in the complaint, in the present case, occurred in 1852, after those statutes. They are to be taken to be actual and bona fide sales and transfers of property to the defendant, who was then a married woman. She became, by these transfers, the owner of these goods; and although she was incapable of any agreement, express or implied, to pay for them, yet that was merely on account of the existence of a legal rule or maxim. The delivery of the goods to her, at her request, under the statute which made them hers, and not her husband's, was a good consideration, out of which an implied promise would at once have arisen, had it not been suspended by the rule of law as to her disability to make an executory agreement. When that disability was removed, it furnished a sufficient consideration for her express promise upon which these actions were founded. The case comes precisely within the rule of the note to Wennall
v. Adney; and it is relieved of the difficulty which was fatal to the plaintiff's action in the other cases referred to.
The demurrer should have been overruled in the court below, and their judgment should be reversed. *Page 623 
DENIO, Ch. J., SELDEN, ROSEKRANS, MARVIN and WRIGHT, Js., concurred. The latter read an opinion, in which he only considered the last question discussed in the opinion of Judge BALCOM, agreeing with him.
Judgment reversed and rendered for plaintiff on the demurrer.
 *Page 9